# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00288-CV

### In re Piatt Services International, Inc.

### ORIGINAL PROCEEDING FROM TRAVIS COUNTY

## O P I N I O N

Piatt Services International, Inc., has filed a mandamus petition in which it challenges, as void, a district-court order granting a new trial in favor of real party in interest Sherri Fowler. We granted a temporary stay and requested a response from Fowler,[1] which she has now filed, and Piatt has added a reply. Having considered the petition, response, reply, and record in light of the governing legal principles, we will deny the petition and vacate the stay.

In the underlying litigation, Piatt sued Fowler and two other defendants, Minks Media, LLC, and Dennis Sissell, seeking damages and attorney's fees based on the defendants' alleged failure to pay Piatt for event-management services Piatt had provided. In May 2015, Piatt obtained a partial summary judgment on its claims against Fowler, which left unresolved only the amount of trial-level attorney's fees Piatt should recover from Fowler. In July 2015, Piatt obtained an interlocutory default judgment on its claims against Minks and Sissell. After further proceedings,

---

[1] *In re Piatt Servs. Int'l, Inc.*, No. 03-16-00288-CV, 2016 Tex. App. LEXIS 4866, at *1 (Tex. App.—Austin May 3, 2016) (per curiam order).

these interlocutory rulings were incorporated into a final judgment, dated November 24, 2015, which awarded Piatt damages and attorney's fees from all three defendants.

Both Fowler and Minks had filed motions for new trial before the district court signed the final judgment—Fowler had done so in June 2015, shortly after the adverse summary-judgment ruling, while Minks had filed its new-trial motion on November 20, 2015, four days before the court signed the judgment. Subsequently, on December 22, 2015, Fowler filed an amended version of her new-trial motion. The district court granted Fowler's amended new-trial motion by written order on February 8, 2016; it did not take any explicit action on Minks's motion. Piatt insists that the district court signed its order granting Fowler a new trial after its plenary power had expired. If Piatt's contention has merit, the order would be void and Piatt would be entitled to mandamus relief.[2]

Texas Rule of Civil Procedure 329b governs the duration of a trial court's plenary power to grant a new trial or to vacate, correct, or reform a judgment. The general or default rule, set forth in paragraph (d), is that the trial court has such plenary power within thirty days after the judgment is signed.[3] However, if any party files a "timely" motion for new trial or to modify, correct, or reform the judgment, paragraph (e) provides that the trial court has plenary power "until thirty days after all such timely-filed motions are overruled, either by a written and signed order or by operation of law, whichever occurs first."[4] Amended motions for new trial have the same effect

---

[2]    *See In re Dickason*, 987 S.W.2d 570, 571 (Tex. 1998) (per curiam) ("Mandamus is appropriate to set aside an order for new trial that is granted after the court's plenary power expires and that is, therefore, void." (citing *Porter v. Vick*, 888 S.W.2d 789, 789–90 (Tex. 1994); *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 918 (Tex. 1985))).

[3]    *See* Tex. R. Civ. P. 329b(d).

[4]    *Id*. R. 329b(e), (g).

on plenary power if filed within thirty days after the date of judgment and before any preceding new-trial motion filed by the movant is overruled.[5]

In this case, the thirtieth day after the date of judgment was deemed to be Monday, December 28, 2015.[6] Consequently, the district court's February 8, 2016 order granting Fowler a new trial is void unless the court's plenary power was extended until that date or later through paragraph (e) of Rule 329b. The parties agree that the motion for new trial filed by Minks and the initial motion for new trial filed by Fowler were each "timely" and effective to invoke paragraph (e). Although each motion was filed prior to the date of judgment, that practice is expressly authorized by paragraph (a) of Rule 329b, which requires that any new-trial motion "shall be filed *prior to* or within thirty days after the judgment or other order complained of is signed."[7] Rule 306c further specifies that "[n]o motion for new trial . . . shall be held ineffective because prematurely filed; but every such motion shall be deemed to have been filed on the date of but subsequent to the time of signing of the judgment the motion assails."[8] Consequently, as Piatt recognizes, the district court's plenary power extended until thirty days after the new-trial motions were overruled "either by a written and signed order or by operation of law, whichever occurs first."[9]

---

[5] *See id*. R. 329b(b); *In re Brookshire Grocery Co.*, 250 S.W.3d 66, 69–73 (Tex. 2008).

[6] The thirtieth day after November 24, 2015, was Thursday, December 24—the Christmas Eve holiday—and therefore was deemed extended past the Christmas holiday and ensuing weekend until the next working day, Monday, December 28. *See* Tex. R. Civ. P. 4.

[7] *Id*. R. 329b(a) (emphasis added).

[8] *Id*. R. 306c.

[9] *See id*. R. 329b(e).

It also follows that Piatt can prevail only if the district court overruled the new-trial motions by "written and signed order," and did so more than thirty days prior to February 8, 2016, when it signed the order granting a new trial. Absent any "written and signed order" overruling the new-trial motions, the motions would be overruled by operation of law upon expiration of the seventy-fifth day after the date of judgment, and thereafter plenary power would extend for another thirty days.[10] The new-trial motions here would have been overruled by operation of law on February 8, 2016.[11] The district court granted Fowler's new-trial motion on the same day, and would have thus been well within the period in which it possessed plenary power. Similarly, Fowler's amended motion for new trial would have been "timely" for purposes of paragraph (e) of Rule 329b, as it was filed within thirty days of the judgment date and would not have been preceded by any order overruling her initial new-trial motion.

Piatt makes no claim that the district court ever signed any written order that, in so many words, denied the motions for new trial.[12] Piatt's analytical linchpin, rather, is that the November 24, 2015 final judgment itself sufficed as a "written and signed order" overruling the new-trial motions. Based on this premise, Piatt contends that the district court's plenary power extended only through December 28, 2015—what is deemed to be the thirtieth day after the date of the

---

[10]   *See id*. R. 329b(c), (e).

[11]   The seventy-fifth day after the date of judgment was February 7, 2016, a Sunday, and Monday, February 8 was the next working day. *See id*. R. 4.

[12]   *Cf. In re Brookshire Grocery Co.*, 250 S.W.3d at 68 (explaining that trial court had overruled new-trial motion by explicit order a few days after the final judgment); *Linan v. Padron*, No. 13-10-00070-CV, 2010 Tex. App. LEXIS 6594, at *3–4 (Tex. App.—Corpus Christi Aug. 12, 2010, no pet.) (mem. op.) (addressing effect on plenary power of prejudgment denial of new-trial motion by explicit order).

judgment, as previously explained. It likewise follows, Piatt adds, that Fowler's amended new-trial motion was untimely and ineffective to extend plenary power, as Fowler's initial motion had been overruled in the judgment.[13]

As support for its premise that the final judgment overruled the prematurely filed new-trial motions, Piatt relies on the following "Mother Hubbard" language that appears in the final judgment's concluding paragraph:

> All relief requested in this case as between Plaintiff and Defendants, Sherri Fowler, Minks Media, LLC d/b/a Southern National Archery Festival, and Dennis Sissell, and not expressly granted herein is denied, including, but not necessarily limited to Defendant, Sherri Fowler's oral Motion to Grant Leave to Supplement the Summary Judgment Record Late and Defendant, Sherri Fowler's oral Motion for Continuance of the hearing on Plaintiff's Motion for Summary Judgment. This Final Judgment finally disposes of all [of] Plaintiff's claims in this matter, and is final and appealable.[14]

As Piatt seems to acknowledge, this paragraph does not specifically refer to new-trial motions, nor can such a reference be found anywhere in the judgment. But it is enough that the Mother Hubbard language denies "[*a*]*ll* relief" requested as between the parties, Piatt reasons, maintaining that this phrase plainly and unambiguously encompassed the new-trial motions that were already on file by that time.

Piatt's reasoning regarding the effects of Mother Hubbard judgment language on a premature new-trial motion echoes a view recently espoused by at least one justice of the

---

[13] *See In re Brookshire Grocery Co.*, 250 S.W.3d at 69–73.

[14] *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 203 (Tex. 2001) (describing a "Mother Hubbard" clause as "the statement, 'all relief not granted is denied,' or essentially those words").

5

Fourteenth Court of Appeals.  This occurred in a mandamus proceeding, *In re Timberlake*,[15] that involved circumstances and issues that are materially parallel to those here—litigants filed a new-trial motion prior to the date of judgment, filed a second new-trial motion following the judgment, the trial court granted the latter motion, and a plenary-power dispute ensued that hinged on whether the premature initial new-trial motion had been denied by the final judgment.[16]  Similar to this case, the dispute centered on the import of Mother Hubbard judgment language in which the trial court had "ORDERED . . . that all other and further relief sought by any party in this cause not otherwise granted in this Judgment is hereby DENIED."[17]

The three-judge panel split 2-1 in favor of the view that the final judgment had not denied the premature initial new-trial motion.[18]  The majority reasoned in part that "the trial court's final judgment makes no mention of the motion for new trial," nor did it perceive any "indication that the trial court otherwise explicitly denied or intended to deny the motion for new trial."[19]  In this regard, the majority appeared to rely on both the text of the judgment (although it did not explicitly discuss that text) and an on-the-record exchange between the parties and the trial court.[20]  The majority also posited that the judgment did not or could not have denied the premature initial new-

---

[15]   ___ S.W.3d ___, No. 14-15-00109-CV, 2015 Tex. App. LEXIS 12279 (Tex. App.—Houston [14th Dist.] Dec. 3, 2015, orig. proceeding).

[16]   *See id*. at *2–4, *7–9.

[17]   *Id*. at *19–20 (Busby, J., dissenting).

[18]   *See id*. at *9–12.

[19]   *Id*. at *9–11.

[20]   *See id*.

trial motion because that motion, per Rule 306c, was deemed to have been filed only after the judgment was signed and was therefore not yet before the court.[21]

The dissent's core argument was that the judgment's Mother Hubbard language had unambiguously denied the prematurely filed initial new-trial motion.[22] It reasoned that "[the movants] are 'part[ies],' their motion for new trial sought 'relief,' and nothing else in the judgment purported to grant that motion."[23] Consistent with this view, the dissent criticized the majority for relying on oral statements by the trial court in what the dissent viewed as derogation of the unambiguous written judgment.[24] The dissent further attacked the majority's reliance on Rule 306c, suggesting that the rule served merely to simplify appellate deadlines, not to deprive a trial court of power to act upon a prematurely filed new-trial motion, and pointing out decisions of the Texas Supreme Court and sister courts that have seemed to recognize that a premature new-trial or other Rule 329b motion can be ruled on at or before the time of judgment.[25]

Not surprisingly, Piatt champions the "strong" and "thoughtful[]" *Timberlake* dissent as the more persuasive guide for us here. Piatt adds that while the dissent represented the views of a single judge on the three-judge panel, the Fourteenth Court, en banc, later split 4-4 (with the

---

[21] *See id.* at *11–12 (citing Tex. R. Civ. P. 306c).

[22] *See id.* at *20 (Busby, J., dissenting).

[23] *Id.*

[24] *See id.* at *21–22.

[25] *See id.* at *24–27 (discussing *Wilkins v. Methodist Health Care Sys.*, 160 S.W.3d 559, 562–64 (Tex. 2005); *Linan*, 2010 Tex. App. LEXIS 6594, at *3–4; *Nuchia v. Woodruff*, 956 S.W.2d 612, 614–15 (Tex. App.—Houston [14th Dist.] 1997, pet. denied); *Harris Cty. Hosp. Dist. v. Estrada*, 831 S.W.2d 876, 877–80 (Tex. App.—Houston [1st Dist.] 1992, no writ)).

ninth justice not participating) on a motion for reconsideration. Although none of the participating justices issued writings elaborating on his or her reasoning for voting for or against reconsideration, the evident divergence of opinion among respected colleagues of our sister court highlights the gravity and potential complexity of the issues Piatt raises here.

To determine whether the final judgment here overruled the prematurely filed new-trial motions of Fowler and Minks, we are to look first and foremost to the text of the judgment as written and, if it is unambiguous, we must give effect to the literal language used.[26] If the judgment is ambiguous, we should look also to the record as an aid in interpreting it.[27] But in neither case are we to read isolated words or phrases in a vacuum—to the contrary, we are to construe the judgment as a whole so as to harmonize and give effect to all of its provisions.[28] As the Texas Supreme Court has emphasized recently, "one cannot divorce text from context" when construing written instruments, as "[t]he meaning of words read in isolation is frequently contrary to the meaning of words read contextually in light of what surrounds them."[29]

Read in the context of the judgment as a whole, it becomes apparent that the role of the Mother Hubbard language on which Piatt relies was to address any remaining requests for "relief . . . in this case" not previously disposed of by the judgment so as to help ensure that the judgment would be final and appealable. Nowhere in the judgment is there any express mention of

---

[26] *See, e.g.*, *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003).

[27] *See id*. at 447–48.

[28] *See id*. at 448.

[29] *In re Office of the Att'y Gen.*, 456 S.W.3d 153, 155–56 (Tex. 2015) (explaining that this is the rule "[w]hen construing statutes, or anything else").

8

the new-trial motions. Rather, the other portions of the judgment focus entirely on addressing requests for "relief" in the sense of Piatt's claims for the money damages, attorney's fees, and other remedies through its causes of action—i.e., matters that the court had to resolve in order to achieve finality. Such intent is further confirmed by the sentence that follows the Mother Hubbard language—"This Final Judgment finally disposes of all [of] Plaintiff's [Piatt's] claims in this matter"—which tracks the language suggested by the Texas Supreme Court in *Lehmann v. Har-Con Corporation* as an unmistakable indicator of finality.[30]

This focus on achieving finality in a judgment differs from—and logically precedes—the subject matter of the new-trial motions. By definition, a motion for new trial seeks relief from a final judgment that has already been formed, as Rule 306c recognizes in terming a new-trial motion filed prior to judgment as "premature."[31] Construing the Mother Hubbard language as Piatt proposes creates an anomaly both contextually and temporally—the language would not only comprise an element of the final judgment (the manifest purpose of the language that would be apparent from a reading of the judgment as a whole), but would also take the additional step of overruling new-trial motions that assail the very judgment being created. Absent more explicit indicia of such intent, we cannot conclude that the Mother Hubbard language, read in context, had this meaning or effect.

Piatt's proposed construction also raises difficulties analogous to those that arise when Mother Hubbard language is used in interlocutory orders. The Texas Supreme Court spoke

---

[30] *See Lehmann*, 39 S.W.3d at 206.

[31] *See* Tex. R. Civ. P. 306c.

9

to that problem in *Lehmann*. When used in the context of a judgment following a "full trial on the merits," the *Lehmann* court reasoned, Mother Hubbard language "indicates the court's intention to finally dispose of the entire matter, assuming that a separate or bifurcated trial is not ordered."[32] "But in an order on an interlocutory motion," the court observed, "the language is ambiguous":

> It may mean only that the relief requested *in the motion*—not all the relief requested by anyone in the case—and not granted by the order is denied. The clause may also have no intended meaning at all, having been inserted for no other reason than that it appears in a form book or resides on a word processor. For whatever reason, the standard Mother Hubbard clause is used in interlocutory orders so frequently that it cannot be taken as any indication of finality.[33]

A parallel problem arises from Piatt's proposed construction. In the context of the judgment in which it appears, the Mother Hubbard language is most obviously intended to reach the claims and defenses whose disposition is necessary to achieve finality. Whether it is also intended to reach the prematurely filed new-trial motions is, to say the least, much less certain. At most, Piatt has identified an ambiguity in the language's meaning and scope, and we find no support in the record for Piatt's interpretation of it.

By this, we do not rule out the possibility that a final judgment could conceivably be drafted in a manner that would also overrule a prematurely filed motion for new trial. Nor, similarly, do we address whether Rule 306c compels the result we reach here, as the *Timberlake* majority reasoned. Our reasoning is more basic—read in its proper context, the Mother Hubbard

---

[32] *Lehmann*, 39 S.W.3d at 204.

[33] *Id*. (emphasis in original).

language in the final judgment here simply did not have the meaning and effect of overruling the prematurely filed new-trial motions.

In the alternative, Piatt urges that the district court overruled Fowler's premature new-trial motion in September 2015, through an order in which the court overruled two motions by Fowler seeking reconsideration of the summary-judgment order. Piatt reasons that the motions for reconsideration were sufficiently similar substantively to the new-trial motion that the September order should be considered a denial of the new-trial motion, effective upon the date of final judgment. Even if Piatt's argument had merit with respect to Fowler, it would not implicate the independent extension of plenary power attributable to Minks's new-trial motion.[34] Aside from its misplaced reliance on the judgment's Mother Hubbard language, Piatt does not contend that the district court ever overruled Minks's motion. Accordingly, plenary power extended through February 8, 2016, when the district court granted Fowler's amended motion for new trial.

We deny Piatt's petition for writ of mandamus. We further lift our stay order of May 3, 2016.

_____

Bob Pemberton, Justice

Before Chief Justice Rose, Justices Pemberton and Bourland

Filed: May 27, 2016

---

[34] *See* Tex. R. Civ. P. 329b(e) (extending plenary power under that paragraph "[i]f a motion for new trial is timely filed *by any party*") (emphasis added).