# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-21-00242-CV
---

**Vista Medical Center Hospital, Surgery Specialty Hospital of America, Southeast Houston and Vista Hospital of Dallas, Appellants**

**v.**

**Texas Mutual Insurance Company; Louisiana Pacific Corporation; American Home Assurance Co.; Texas Department of Transportation; State Office of Risk Management; Twin City Fire Insurance Company; Continental Casualty Company; Valley Forge Insurance Company; Transportation Insurance Company; Texas Hospital Insurance Exchange; Mid-Century Insurance Company; TPCIGA for United Pacific Insurance Co.; TPCIGA for Legion Insurance Co.; TPCIGA for Home Indemnity Co.; TPCIGA for Freestone Insurance f/k/a Dallas National Insurance Co.; National Fire Insurance; Hartford Underwriters Insurance Co.; National Fire Insurance Co. of Hartford; ACIG Insurance Co.; TPCIGA for Petrosurance Casualty Co.; TASB Risk Management Fund; Midwest Employers Casualty Co.; TPCIGA for Lumbermens Mutual Casualty Co.; National American Insurance Co.; Aberdeen Insurance Co.; Highlands Casualty Co.; TPCIGA for American Motorists Insurance Co.; Transcontinental Insurance Co.; United States Fire Insurance Co.; Reliance National Indemnity Co.; TPCIGA for Centennial Insurance Co.; American Casualty Co. of Reading, PA; Zenith Insurance Co.; Hartford Casualty Insurance Co.; TPCIGA for Credit General Indemnity; TPCIGA for Fremont Indemnity Co; TPCIGA for Paula Insurance Co.; Ace Insurance Co. of Texas; Ace American Insurance Co.; Lockheed Martin Corp.; Insurance Co. of the State of PA; International Paper Co.; Lowes Home Center, Inc.; Pacific Employers Insurance Co.; American Zurich Insurance Co.; Fireman's Fund Insurance Co.; American Insurance Co.; Federal Insurance Co.; Kmart Corp.; Great Northern Insurance Co.; Onebeacon Insurance Co.; Liberty Mutual Fire Insurance Co.; Liberty Insurance Corp.; Liberty Mutual Insurance Co.;American States Insurance Co. of Texas; Employers Insurance Co. of Wausau; Service Lloyds Insurance Co.; Texas Association of Counties RMP; LM Insurance Corp.; Wausau Business Insurance Co.; JC Penny Corporation, Inc.; Zurich American Insurance Co.; Sentry Insurance a Mutual Company; Sentry Select Insurance Co.; Dallas I.S.D., self-insured; Albertson's, Inc., self-insured; RCH Protect Cooperative; Commerce & Industry Insurance Co.; Illinois National Insurance Co.; Fidelity & Guaranty Insurance Co.; Facility Insurance Corp.; City of Pasadena, self-insured; City of Rowlett, self-insured, City of Hempstead, self-insured; Employers Mutual Casualty Co.; American Guarantee & Liability Ins.; Gray Insurance Co.; East Texas Educational Insurance Association, self-insured; Harbor Specialty Insurance Co.; New Hampshire Insurance Co.; Bitco General Insurance Corp., formerly Bituminous Casualty Corp.;**

**America First Lloyds Insurance Co.; Arrowood Indemnity Co. for Royal Insurance Co. of America WC Solutions; Old Glory Insurance Co.; Old Republic Insurance Co.; Houston General Insurance Co.; Beaumont I.S.D., self-insured; Arrowood Indemnity Co. for Security Insurance Co. of Hartford; Target Corp.; Federated Mutual Insurance Co.; St. Paul Fire & Marine Insurance Co.; Indemnity Insurance Co. of North America; Dallas County; Bankers Standard Insurance Co.; Travelers Indemnity Co. of Connecticut; Travelers Casualty and Surety Co.; Travelers Indemnity Co. of America; Travelers Property Casualty Co.; Phoenix Insurance Co.; Wausau Underwriters Ins. Co., Appellees**

---

**FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-19-004290,[1] THE HONORABLE JAN SOIFER, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

This appeal arises from a dispute over the proper reimbursement of workers' compensation medical benefits provided by Vista Medical Center Hospital, Surgery Specialty Hospital of America, Southeast Houston, and Vista Hospital of Dallas (collectively, Vista Parties) to workers covered by insurance policies issued by appellees (Carriers). The Vista Parties requested a contested case hearing before the State Office of Administrative Hearings (SOAH). After the SOAH hearing, the administrative law judges (ALJs) signed an order (the SOAH Order) concluding that the Vista Parties were not entitled to additional reimbursement. The district court affirmed the SOAH Order, and the Vista Parties appealed to this Court. We affirm the district court's judgment.

---

[1] The district court consolidated the following cause numbers for briefing and decision: Cause Nos. D-1-GN-19-004290, D-1-GN-19-004628, D-1-GN-19-004329, D-1-GN-19-004362, D-1-GN-19-004372, D-1-GN-19-004365, D-1-GN-19-004279.

## BACKGROUND

*Statutory Context*

The Texas Workers' Compensation Act requires insurers to make "appropriate payment of charges for medical services" provided to covered workers. Tex. Lab. Code § 413.015(a).[2] In 1989, the legislature required the Division of Workers' Compensation in the Texas Department of Insurance (Division) to promulgate reimbursement guidelines to ensure the quality of medical care without unnecessary expense to insurance carriers.[3] *See* Act of Dec. 13, 1989, 71st Leg., 2d C.S., ch. 1, § 8.01, 1989 Tex. Gen. Laws 1, 68 (codified as amended at Tex. Lab. Code § 413.011). Once the Division adopts guidelines addressing a certain type of medical care, insurance carriers must compensate a provider of that care in "accordance with the fee guidelines." Tex. Lab. Code § 408.027(f).

If an insurance carrier denies or reduces the charges in a provider's bill, either entity may seek review of the claim by the Division. *Id.* § 413.031(a)(1); *see* 28 Tex. Admin. Code § 133.307 (2021) (Tex. Dep't- Ins., MDR—General). In cases where the dispute is "over the amount of payment due for services determined to be medically necessary and appropriate for treatment of a compensable injury," as it is here, the Division "is to adjudicate the payment given the relevant statutory provisions and commissioner rules." Tex. Lab. Code § 413.031(c). If the dispute "remains unresolved" after the review, a party may seek a de novo contested case hearing conducted by SOAH. *See* Tex. Lab. Code § 413.031(k); 28 Tex. Admin. Code

---

[2] Unless otherwise noted, we cite to the current version of statutes for convenience.

[3] The events here involve the Division and its predecessor agency, the Workers Compensation Commission. In 2005, the legislature abolished the Commission and transferred its responsibilities and powers to the Division. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 265, §§ 8.001(b), .004(a), 2005 Tex. Gen. Laws 607, 608. For simplicity, we refer to both agencies as "the Division."

§ 133.307(g)(2). The burden of proof before SOAH is on the party seeking review of the Division's initial decision. *Patients Med. Ctr. v. Facility Ins. Corp.*, 623 S.W.3d 336, 343 (Tex. 2021). Following the hearing, the ALJ renders the final decision on the claim. *See* Tex. Lab. Code § 402.073(b); *Vista Med. Ctr. Hosp. v. Texas Mut. Ins.*, 416 S.W.3d 11, 18 (Tex. App.—Austin 2013, no pet.) [*Vista II*]. A party who is aggrieved by the ALJ's final order may seek judicial review under the Administrative Procedures Act (APA) in Travis County District Court. *See* Tex. Lab. Code § 413.013(k-1) ("Judicial review under this subsection shall be conducted in the manner provided for judicial review of a contested case under Subchapter G, Chapter 2001, Government Code[.]"); *Vista II*, 416 S.W.3d at 18. "The Division is not considered to be a party to the dispute for purposes of the contested case hearing and the judicial-review proceeding." *Patients Med. Ctr.*, 623 S.W.3d at 338 (citing Tex. Lab. Code § 413.031(k-2)).

*Stop-Loss Controversy*

This case is the latest dispute over fee guidelines the Commission promulgated in 1997 governing the amount of medical reimbursement carriers must pay for inpatient hospital admissions.[4] *See* 22 Tex. Reg. 6305, 6305–08 (1997) *repealed by* 33 Tex. Reg. 5319 (former 28 Tex. Admin Code § 134.401) (Former Rule 134.401). Former Rule 134.401 generally requires reimbursement according to a per diem methodology based on the category of admission, such as "medical" or "surgical." Former Tex. Admin Code § 134.401(c)(1)-(2). It requires additional reimbursement for certain types of services or admissions. For example, implantables, orthotics, and prosthetics are reimbursed to the hospital at cost plus 10%. *Id.*

---

[4] This Court has adjudicated several other cases involving disputes between Vista Parties and insurers. *See Facility Ins. Co. v. Vista Hosp. of Dall.*, No. 03-18-00663-CV, 2019 WL 6603168, at *1 (Tex. App.—Austin Dec. 5, 2019, pet. denied) (mem. op.) (citing this Court's previous decisions).

§ 134.401(c)(4)(A). Admissions for "trauma" and "rehabilitation" are also reimbursed "at a fair and reasonable rate." *Id.* § 134.401(c)(6)(A). We refer to reimbursement according to this methodology—per diem plus any applicable additional reimbursements—as the per diem methodology.

In the event of "an unusually costly or lengthy stay," Former Rule 134.401 establishes an independent reimbursement methodology—called the "stop loss exception"—"to ensure fair and reasonable compensation to the hospital for unusually costly services rendered during treatment to an injured worker." *Id.* § 134.401(c)(6); *see Texas Mut. Ins. Co. v. Vista Cmty. Med. Ctr., LLP*, 275 S.W.3d 538, 550 (Tex. App.—Austin 2008, pet. denied) [*Vista I*]. When applicable, the stop-loss exception requires the carrier to pay the provider 75% of the hospital's total audited charges for the entire hospital stay.[5] Former Tex. Admin Code § 134.401(c)(6)(A)(iii). Application of the exception "tends to yield hospitals reimbursement for a given hospital admission that is substantially more generous—indeed, potentially several times larger—than the amounts prescribed under the standard per diem methodology." *Vista II*, 416 S.W.3d at 18.

Former Rule 134.401 states that a hospital's total audited charges must meet a "minimum stop-loss threshold" of $40,000 for the stop-loss exception to apply. Former Tex. Admin Code § 134.401(c)(6)(A)(i). Various hospital operators, including Vista, interpreted this to mean that charges for admission need only exceed $40,000 for the exception to apply. *See Vista I*, 275 S.W.3d at 545. On the other hand, insurance carriers argued that providers must

---

[5] Audited charges are defined as those billed charges that remain after the carrier has excluded charges for personal items, services that are not documented as having been provided, and services determined to be unrelated to the compensable injury. Former Rule § 134.401(c)(6)(A)(v). In this case, we construe "billed charges" as synonymous with "audited charges" because none of the carriers elected to perform an audit.

exceed the threshold and demonstrate, by a case-by-case analysis, that admission involved unusually costly and unusually expensive services. *Id.*

This Court addressed the issue in *Vista I* and concluded that, for the exception to apply, "total audited charges exceed $40,000 and that an admission involved unusually costly and unusually extensive services." *Id.* at 550. Our conclusion rested on the structure of the rule, which provides that reimbursement will be by the per diem method unless an exception applies. *Id.* (citing former Tex. Admin Code § 134.401(c)(2)). It further provides that "independent reimbursement" is allowed under the stop-loss exception "on a case-by-case basis if the particular case exceeds the stoploss threshold[.]" *Id.* (citing former Tex. Admin Code § 134.401(c)(2)(C)). When read together, these provisions suggest that the stop-loss exception "was meant to apply on a case-by-case basis in relatively few cases." *Vista I*, 275 S.W.3d at 550. Without a case-by-case determination of whether an admission involved unusually costly and unusually extensive services, the stop-loss exception "would mechanically apply in all cases where total audited charges exceeded $40,000." *Id.* "What is unusually costly and unusually extensive in any particular fee dispute remains a fact-intensive inquiry best left to the Division's determination on a case-by-case basis." *Id.* at 554.

*Current Litigation*

This appeal arises from disputes over reimbursement for medical services—mostly spinal surgeries—provided to 542 injured workers from 1997–2008. In each case, the provider submitted a reimbursement claim to the relevant provider who generally paid at the per diem rate. Following this Court's decision in *Vista I*, the Vista Parties initiated medical fee dispute resolution in these cases seeking additional reimbursement, mainly stop-loss payments.

6

The Division issued a decision in each case, most of which were in favor of the Carriers. Vista Hospitals and certain carriers timely requested contested case hearings in those cases determined adversely to them. SOAH appointed a panel of five ALJs to hear the disputes.

The cases were set for a final hearing in February of 2016. The parties submitted extensive pre-filed testimony and exhibits. Much of the expert testimony concerned the method for determining whether an admission that exceeds the stop-loss threshold "involved unusually costly and unusually extensive services." The Carriers submitted testimony from, inter alia, Dr. Ronald Luke, a health care billing expert. Dr. Luke testified that this process should involve three steps. The first is to determine whether the per diem payment covered the hospital's costs. If it did, there was no "loss" to "stop" and the analysis ends. If it did not, the second step calls for a physician with the same or similar specialty as the physician who performed the "principal procedure during the admission" to review the medical records and determine whether any of the services provided were "unusually extensive" "relative to other admissions with the same principal procedure." According to Luke, the final step is a "case-by-case" analysis to determine if the hospital's loss was due to the unusually extensive services or some other factor.

The Vista Parties, in contrast, proposed "determining whether the admission was assigned to a Medicare DRG with a relative weight greater than 1.6 or some other number." A "DRG" is a group of admissions that the Center for Medicaid and Medicare Services (CMS) expects to require similar amounts of hospital resources. Each discharge is assigned to a DRG "based on factors including diagnosis, procedure, complications, comorbidities, and patient age." CMS assigns a weight to each DRG "that reflects the average relative costliness of cases in that group compared with the costliness for the average Medicare case." The higher the relative weight, the more costly the admission. Bruce Malone, M.D., testified for the Vista Parties that,

7

in his opinion, "a relative weight of 1.6 means that the procedure in question significantly exceeds the average admission's complexity and cost[.]"

The Vista Parties also submitted a cost worksheet for each disputed admission. The worksheet includes the charges billed, the procedures performed, certain patient information, the allowable costs reimbursable using Medicare cost-to-charge ratios, the amount paid by the insurance carrier, and the outstanding amount. In total, the Vista Parties claimed that their costs exceeded the reimbursements already paid by $8,822,532.18.

The ALJs held a final hearing on the merits on February 23–24, 2016. They considered the prefiled testimony and exhibits and heard live testimony. Following that hearing, the ALJs issued a Decision and Order (SOAH Order). They began by recounting the history of litigation over the stop-loss exception and stating that *Vista I* left unresolved the question of defining what constitutes "unusually costly and unusually extensive" services. They rejected the Vista Parties' proposal because it used "bright line comparisons" rather than the case-by-case analysis mandated by *Vista I*.[6]

The ALJs did not explicitly adopt one of the proposed methodologies but adopted a two-part analysis that shares certain features with Dr. Luke's analysis. For the "unusually costly" determination, the ALJs began by comparing the hospital's costs for the admission against the per diem reimbursement for that admission. They calculated the costs using the CMS departmental cost-to-charge ratio methodology. Broadly, this methodology entails multiplying the charges billed by each hospital department by a ratio assigned by CMS—such as .33—to

---

[6] Both the Carriers and the Vista Parties proposed multiple approaches for determining whether an admission required unusually costly and unusually extensive services. We discuss only the theories relevant to the Vista Parties' appellate issues.

8

arrive at the actual costs for the admission.[7]  If the costs were covered by the per diem reimbursement, "then no further analysis is required."

If the costs exceeded the per diem reimbursement, the ALJs moved to the "unusually extensive" prong.  This part of the analysis "attempts to determine why the hospital's costs . . . were not covered by the per diem reimbursement."  To do this, they considered "the injured worker's prior medical history, condition and medical events at the time of admission through time of surgery, the surgery and medical events during surgery, and post-operative condition and post-operative medical events until time of discharge."  If the ALJs concluded that the services provided were unusually extensive, the ALJs applies the stop-loss exception and ordered reimbursement of 75% of the total audited charges for the admission.  *See* former Tex. Admin Code § 134.401(c)(6)(A)(iii).  Even if the ALJs' analysis determined the admission did not require unusually extensive services, "the reimbursement deficiency may simply reflect that the per diem reimbursement was inadequate" for other reasons.  Because the ALJs examined each dispute "on a case-by-case basis, they attempted to address some deficiencies in implant reimbursement calculations and some calculation errors."

Applying this methodology, the ALJs concluded that:

- 14 admissions qualified for the stop-loss exception and ordered the relevant carriers to make stop-loss payments in those cases;

---

[7] CMS creates cost-to-charge ratios by using the information supplied by a hospital in its annual reports.  By using billing records, an auditor determines the total amount of nominal charges billed by the hospital for covered services.  *See generally* 42 C.F.R. §§ 413.9, .20.  This amount is then divided by the auditor-determined amount of actual costs to arrive at a cost-to-charge ratio.  *See generally El Paso Healthcare Sys., LTD v. Molina Healthcare of New Mexico, Inc.,* 683 F. Supp. 2d 454, 477 (W.D. Tex. 2010).  Thus, a cost-to-charge ratio of 33% "means that, on average, the cost of services is just one third of what the hospital seeks to bill for its services."  *Id.*  CMS assigns ratios both for entire hospitals and departments within the hospital.

- 461 admissions did not qualify for a stop-loss payment and the Carriers did not owe any additional payments;

- 57 admissions did not qualify for stop-loss payments but the Vista Hospitals were entitled to additional payments under the per diem methodology;

- 10 admissions were for trauma or rehabilitation and were to be reimbursed under the separate, fair-and-reasonable rate.

Based on these findings, the ALJs awarded the Vista Parties a total of $1,002,191 in additional reimbursement. The Vista Parties sought judicial review of the SOAH Order. The district court affirmed the order in its entirety, and the Vista Parties appealed.

## STANDARD OF REVIEW

Judicial review of the SOAH Order in a medical fee dispute is under the substantial evidence rule. *See* Tex. Lab. Code § 413.031(k-1); *Patients Med. Ctr.*, 623 S.W.3d at 340. Under that standard, a reviewing court "shall reverse or remand the case for further proceedings" if the appellant's substantial rights "have been prejudiced because the administrative findings, inferences, conclusions, or decisions" are:

(A) in violation of a constitutional or statutory provision;

(B) in excess of the agency's statutory authority;

(C) made through unlawful procedure;

(D) affected by other error of law;

(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

10

Tex. Gov't Code § 2001.174(2). The reviewing court presumes the order is valid, and the burden is on the contestant to demonstrate otherwise. *See Facility Ins. Corp. v. Patients Med. Ctr.*, No. 03-17-00666-CV, 2022 WL 4099832, at \*7 (Tex. App.—Austin Sept. 8, 2022, no pet. h.) (mem. op.) (op. on remand) (citing *Texas Comm'n on Envtl. Quality v. Maverick County*, 642 S.W.3d 537, 547 (Tex. 2022)); *see also Jenkins v. Crosby Indep. Sch. Dist.*, 537 S.W.3d 142, 149 (Tex. App.—Austin 2017, no pet.). We apply this analysis without deference to the trial court's judgment. *See Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (per curiam); *R.E. Janes Gravel Co. v. Texas Comm'n on Envtl. Quality*, 522 S.W.3d 506, 511 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

## DISCUSSION

The Vista Parties argue on appeal that the SOAH Order is arbitrary and capricious and not reasonably supported by substantial evidence. *See* Tex. Gov't Code § 2001.174(2)(E), (F).

*Arbitrary and Capricious*

The Vista Parties argue that the SOAH Order is arbitrary and capricious because the ALJs (1) "failed to consider Medicare methodologies, models, and values or weights" as required by the legislature when deciding whether the stop-loss exception applies; (2) considered an irrelevant factor in making that determination; (3) reached an unreasonable result even if they considered only relevant factors, and (4) failed to make adequate findings of fact.

### Consideration of Medicare Methodologies

First, the Vista Parties argue that the SOAH Order is arbitrary and capricious because the ALJs disregarded a legislative mandate that they consider the most current

11

"Medicare methodologies, models, and values or weights" in resolving medical fee reimbursement disputes. The Vista Parties allege this mandate arises from Section 413.011 of the Act, which provides:

> The commissioner shall adopt health care reimbursement policies and guidelines that reflect the standardized reimbursement structures found in other health care delivery systems with minimal modifications to those reimbursement methodologies as necessary to meet occupational injury requirements. *To achieve standardization, the commissioner shall adopt the most current reimbursement methodologies, models, and values or weights used by the federal Centers for Medicare and Medicaid Services, including applicable payment policies relating to coding, billing, and reporting*, and may modify documentation requirements as necessary to meet the requirements of Section 413.053.

Tex. Lab. Code § 413.011(a) (emphasis added). They argue that we held in *Vista I* that this provision "applies not only to fee guidelines but to individual adjudications such as the cases in this appeal." In other words, they argue that *Vista I* interpreted Subsection 413.011(a) to require the ALJs to use "methodologies, models, and values or weights" even though Former Rule 134.401 does not. The Carriers respond that *Vista I* did not impose such a requirement.

We agree with the Carriers. The requirement that the Division's fee guidelines follow Medicare reimbursement policies and methodologies was not part of the statute in 1997 when the Division adopted Former Rule § 134.401. *See* Act of May 22, 1993, 73rd Leg., R.S., ch. 269, § 413.011, 1993 Tex. Sess. Law Serv. 1, 1223, *codified as amended*, Tex. Lab. Code § 413.011(a). The legislature added that requirement in 2001. *See* Act of May 25, 2001, 77th Leg., R.S., ch. 1456, § 6.02, 2001 Tex. Gen. Laws 5167, 5185. The Division repealed Former Rule 134.401 in 2008 but it remains in effect for "reimbursements related to admissions prior to March 1, 2008." 33 Tex. Reg. 5319–20. In *Vista I*, certain insurance carriers argued that the amendments to Subsection 413.011(a) rendered Former Rule § 134.401 invalid. 275 S.W.3d

12

at 551. We disagreed because Subsection 413.011(a) did not include that requirement when the Division adopted the rule. *See id.* at 551 & n.9 (explaining that courts generally measure the validity of rule by whether it comports with statutes in effect at its adoption). Nothing in *Vista I* requires application of Medicare reimbursement methodologies in fee disputes in which Former Rule 134.401 is applicable. The ALJs did not err by applying Former Rule 134.401's reimbursement methodologies to the fee disputes here. *See*, *e.g.*, *Rodriguez v. Serv. Lloyds Ins. Co.*, 997 S.W.2d 248, 255 (Tex. 1999) (if agency "does not follow the clear, unambiguous language of its own regulation, we reverse its action as arbitrary and capricious").

We overrule the Vista Parties' first issue.

**Irrelevant Factor**

Next, the Vista Parties argue that the ALJs erred by considering an irrelevant factor: "why the hospital's costs for Per Diem Services were not covered by per diem reimbursement." They argue that there is "nothing in the Labor Code, [Former Rule § 134.401] or case law which suggests that either providers or SOAH should ask and answer 'why' per diem is inadequate as a condition to stop-loss reimbursement." Instead, the ALJs should have considered only whether the services provided were "unusually extensive." The Carriers respond that the ALJs did not consider a new factor but characterized the "unusually extensive" inquiry as asking "why" the per diem reimbursement was inadequate.

We agree with the Carriers. The Court held in *Vista I* that what constitutes "unusually costly and unusually extensive" services in any particular fee dispute is "a fact-intensive inquiry best left to the Division's determination on a case-by-case basis." 275 S.W.3d at 554. Here, the ALJs explained in the SOAH Order that they conducted just such a

13

case-by-case inquiry. They considered (1) each injured worker's prior medical history, (2) the worker's condition and medical events from the time of admission through surgery, (3) the surgery and medical events during surgery, (4) the worker's post-operative condition and post-operative medical events until time of discharge, and the (5) "need and scope of consulting specialists" (but not the cost of those services) needed during the admission. Construing the SOAH Order as a whole, the ALJs characterized the "unusually extensive" inquiry as analyzing "why the hospital's costs" were "not covered by per diem reimbursement." *See In re Piatt Services Int'l, Inc.*, 493 S.W.3d 276, 281 (Tex. App.—Austin 2016, orig. proceeding [mand. denied]) (noting that when construing court orders, "we look first and foremost to the text of the judgment as written" (citing *Shanks v. Treadway*, 110 S.W.3d 444, 447–48 (Tex. 2003))). We overrule the Vista Parties' second issue.

### Findings of Fact

Next, the Vista Parties argue that the ALJs failed to make adequate findings of fact. *See* Tex. Gov't Code § 2001.141. Section 2001.141 of the APA provides that a final administrative order "must include findings of fact and conclusions of law, separately stated" and that findings "may be based only on the evidence and on matters that are officially noticed." *Id.* § 2001.141(b)–(c). "Findings of fact, if set forth in statutory language, must be accompanied by a concise and explicit statement of the underlying facts supporting the findings." *Id.* § 2001.141(d).

The ALJs made the following findings of ultimate fact:

25. For the cases set forth in Attachment 1, the preponderance of the credible evidence in the record shows the inpatient hospital stay qualifies for the Stop-Loss

14

Exception to the per diem methodology and that additional reimbursement is owed to Provider by the respective Carrier.

26. For the cases set forth in Attachment 2, the preponderance of the credible evidence in the record shows the inpatient hospital stay does not qualify for the Stop-Loss Exception to the per diem methodology and that no additional reimbursement is owed to Provider by the respective Carrier.

27. For the cases set forth in Attachment 3, the preponderance of the credible evidence in the record shows the inpatient hospital stay does not qualify for the Stop-Loss Exception to the per diem methodology but that additional reimbursement is owed to Provider by the respective Carrier.

The Vista Parties argue that the ALJs were obligated to make findings of underlying fact regarding the "unusually costly" and "unusually extensive" elements in each case. They argue that the absence of these findings makes it difficult for them to "intelligently prepare and present this appeal" and hinders our review of the order. *Cf. West Tex. Utilities Co. v. Office of Pub. Util. Counsel*, 896 S.W.2d 261, 270 (Tex. App.—Austin 1995, writ dism'd) ("The requirement that an agency make findings of fact to support a decision grew out of several objectives: to restrain an agency from making a decision without full consideration of the evidence, to inform parties of the facts so that they may intelligently prepare and present an appeal, and to assist the courts in properly exercising their reviewing function."). The Carriers respond that Section 2001.141 does not require findings of underlying fact in this instance.

We agree with the Carriers. The supreme court has held that findings of underlying fact are not required in a final administrative order unless "an ultimate fact embodies a mandatory fact finding set forth in the relevant enabling act" or when the ultimate fact represents a criterion "the legislature has directed the agency to consider in performing its function." *Texas Health Facilities Comm'n v. Charter Med.-Dall., Inc.*, 665 S.W.2d 446, 451 (Tex. 1984). "Stated conversely, when an agency's enabling act does not require it to make any

15

particular finding of fact or does not direct it to consider any particular criterion," then "the agency is not obligated to make any findings of basic fact at all." *Harrison v. Texas State Bd. of Dental Exam'rs*, No. 03-18-00229-CV, 2020 WL 370886, at *5 (Tex. App.—Austin Jan. 23, 2020, no pet.) (mem. op.). Subsection 2001.141(d) does not apply to findings required by an administrative rule. *See Charter Med.-Dall.*, 665 S.W.2d at 451 ("By limiting the fact-finding requirement to findings 'set forth in statutory language,' the legislature has expressed its intention in this matter."); *Texas Comm'n on Envtl. Quality v. Maverick Cnty.*, No. 03-17-00785-CV, 2022 WL 2960797, at *5 (Tex. App.—Austin July 27, 2022, no pet.) (mem. op.) ("The plain language of section 2001.141(d) applies only to statutory findings, not regulatory findings."). Section 2001.141 did not require the ALJs to make findings of underlying fact here. *See West Tex. Utilities Co.*, 896 S.W.2d at 270 ("An agency's finding of ultimate fact that does not embody a mandatory fact finding set forth in the relevant enabling act need not be supported by findings of basic fact, regardless of how conclusory the finding of ultimate fact may be.").

The Vista Parties nonetheless argue that specific findings on the "unusually costly" and "unusually extensive" prongs are necessary to demonstrate the ALJs in fact considered the relevant factors. *See, e.g., Heritage on San Gabriel Homeowners Ass'n v. Texas Comm'n on Envtl. Quality*, 393 S.W.3d 417, 423 (Tex. App.—Austin 2012, pet. denied) ("[W]e must remand for arbitrariness if we conclude that the agency has not genuinely engaged in reasoned decision-making."). First, they argue that without a specific finding regarding the actual costs for each admission, there is "no evidence that either SOAH or any other party did any cost analysis of each case that would support the conclusions reached by SOAH that per diem was sufficient" to cover the hospital's costs. Similarly, they argue that findings are

necessary for the "unusually extensive" prong to show how the ALJs weighed each of the factors enumerated in the SOAH Order. In effect, the Vista Parties argue that we should presume the SOAH Order is arbitrary and capricious unless the ALJs made findings demonstrating the contrary. However, Section 2001.174 requires us to presume the factfinder acted in compliance with the law and places the burden on the contestant to demonstrate otherwise. *See Facility Ins. Corp.*, 2022 WL 4099832, at *7 (citing *Maverick County*, 642 S.W.3d at 547); *see also State Bd. for Educator Certification v. Tran*, No. 03-18-00855-CV, 2020 WL 6834219, at *8 (Tex. App.—Austin Nov. 20, 2020, pet. denied) (mem. op) ("We presume that the agency's order is 'a valid exercise of [the agency's] power and discretion' and that the agency 'performed [its] duties in compliance with the law'; the party challenging the order has 'the burden to show [that the agency] did not.'" (quoting *Vandygriff v. First Sav. & Loan Ass'n of Borger*, 617 S.W.2d 669, 673 (Tex. 1981))). We decline to treat the absence of findings of underlying fact that are not required by the APA as showing the ALJs did not engage in reasoned decision making.

We overrule the Vista Parties' third issue.

**Unreasonable Result**

The Vista Parties argue in their fourth issue that even if the ALJs considered only legally relevant factors, they reached an unreasonable result. Specifically, they argue that the "gross disparity" between the $1,002,191.00 award and their $8,822,532.18 in unreimbursed costs makes the award unreasonable. The Carriers respond that the disparity is not a relevant consideration and, in the alternative, that the record shows the Vista Parties' costs are unreasonably high.

17

We agree with the Carriers that the disparity is not relevant in this context. The Vista Parties argue that we have previously considered the disparity between a provider's costs and the reimbursement amount and should do the same here. *See Vista Med. Ctr. Hosp. v. State Office of Risk Mgmt.*, No. 03-17-00352-CV, 2018 WL 3999595, at \*2 (Tex. App.—Austin Aug. 22, 2018, no pet.) (mem. op.) [*Vista Medical*]. However, *Vista Medical* concerned reimbursement for medical services that were not covered by a fee guideline or contract. 2018 WL 3999595, at \*1. If no fee guideline or contract applies, Division rules require carriers to provide "a fair and reasonable reimbursement amount." *Id.*; *see* 28 Tex. Admin. Code § 134.1(e)(3) (2022) (Tex. Dep't - Ins., Medical Reimbursement). We recognized in *Vista Medical* that evidence showing that the insurer's "proposed reimbursement was less than half the billed rate . . . and did not cover the actual cost of performing most of the procedures at issue" were "relevant considerations" in determining whether a reimbursement amount was fair and reasonable. 2018 WL 3999595, at \*2.

Here, in contrast, Former Rule § 134.401 generally requires reimbursement at specified rates. The Vista Parties ask us to take the disparity between their costs and the reimbursement due to them under Former Rule § 134.401 in determining whether the amount is reasonable. For those services and admissions reimbursable at a rate other than fair and reasonable, we decline that invitation. Nothing in Former Rule § 134.401 makes the disparity between claimed costs and reimbursement relevant under those rates, and we must enforce the rule as written. *See Patients Med. Ctr.,* 623 S.W.3d at 341 ("[W]e strive to give effect to the promulgating agency's intent, 'which is generally reflected in the [rules'] plain language.'" (quoting *Zanchi v. Lane*, 408 S.W.3d 373, 376 (Tex. 2013))). We are similarly unpersuaded regarding those ten admissions for "trauma" for which the ALJs ordered fair and reasonable

18

reimbursement.  Even assuming that *Vista Medical* applies in this context, the Vista Parties do not explain how the reimbursement amount in any of those cases fails to meet the "fair and reasonable" standard.[8]

We overrule the Vista Parties' fourth issue.

*Substantial Evidence*

The Vista Parties argue in their fifth issue that the SOAH Order is not supported by substantial evidence in the record.  *See* Tex. Gov't Code § 2001.174(2)(E).  Substantial evidence review for purposes of Subsection 2001.174(2)(E) is essentially "a rational-basis test to determine, as a matter of law, whether an [administrative order finds reasonable support in the record."  *Jenkins*, 537 S.W.3d at 149.  Substantial evidence in this sense "does not mean a large or considerable amount of evidence, but such relevant evidence as a reasonable mind might accept as adequate to support a conclusion of fact."  *Slay v. Texas Comm'n on Envtl. Quality*, 351 S.W.3d 532, 549 (Tex. App.—Austin 2011, pet. denied).  Put differently, the test "is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency."  *Facility Ins. Corp.*, 2022 WL 4099832, at *4 (citing *Maverick County*, 642 S.W.3d at 544).

Although briefed as a single issue, the Vista Parties present several related challenges to the SOAH Order.  First, they assert that the ALJs could not have used the "CMS departmental cost-to-charge ratios methodology" to conclude that "only $1,002,191.00 was

---

[8]  Some of the other admissions involved services that Former Rule § 134.401 states are reimbursed at a fair and reasonable rate even if the fair-and-reasonable methodology does not apply to the overall admission.  *See, e.g.*, former Tex. Admin Code § 134.401(c)(4)(B) (listing four services, including "blood" that are reimbursable at fair and reasonable rate).  Our reasoning here applies equally to reimbursement for those services.

19

needed to cover [the Vista Parties'] actual costs." The Vista Parties assert that the only information regarding their costs comes from the worksheets they submitted, which show $8,822,532.18 in unreimbursed costs.

We disagree. The Vista Parties presume they are entitled to recover 100% of their costs whether calculated using Medicare cost-to-charge ratios or another methodology. Former Rule § 134.401 does not require reimbursement of 100% of a provider's total costs for an admission. If the stop-loss exception applies, providers are reimbursed for 75% of their audited costs for the admission. *See* former Tex. Admin Code § 134.401(c)(6)(A)(iii). Although the rule prescribes other methodologies for services that qualify for "additional reimbursement," *see id.* § 134.401(c)(4)(A)–(C), nothing in Former Rule § 134.401 ensures that reimbursement will cover a provider's costs in every case, *see id.*; *see also* Tex. Lab. Code § 413.016(a) (requiring Division to order providers to refund payments that exceed guidelines).

The Vista Parties also argue that the record does not support the ALJs conclusion that only fourteen admissions qualified for the stop-loss exception. They contend that the only evidence in the record—their cost worksheets and supporting evidence and testimony—supports applying the exception in every case. However, the SOAH Order reflects that the award of $1,002,191.00 constitutes stop-loss payments, additional reimbursement under the per diem rate, and fair-and-reasonable reimbursement for admissions for trauma and rehabilitation. It is not clear how much of that award constitutes stop-loss payments. In any event, we need not decide whether the record supports that every case was "unusually costly" because the record supports that the Vista Parties failed to prove the "unusually extensive" prong. *See* Tex. R. App. P. 47.1

As set out in the SOAH Order, the ALJs considered a variety of case-specific factors in determining whether an admission involved unusually extensive services: "the injured

20

worker's prior medical history, condition and medical events at the time of admission through time of surgery, the surgery and medical events during surgery, and post-operative condition and post-operative medical events until time of discharge." The Vista Parties argue that analyzing these factors to determine whether the services provided in a particular case were "unusually extensive" requires "medical evidence" and expert testimony. They assert that the Carriers did not provide this evidence because their experts did not evaluate all the disputed admissions. However, even assuming that "medical" expert testimony is always required to prove whether services were "unusually extensive" for purposes of Former Rule § 134.401, the Vista Parties bore the burden of proof before SOAH. *See Patients Med. Ctr.*, 623 S.W.3d at 343 (burden of proof before SOAH in medical fee dispute is on party seeking relief). The Vista Parties sought to prove the "unusually extensive" prong through the relative-weight analysis. The Vista Parties proposed that all admissions assigned to a Medicare DRG with a relative weight of 1.6 be treated as involving unusually extensive services. Dr. Malone testified that, in his view, "a relative weight of 1.6 means that the procedure in question significantly exceeds the average admission's complexity and cost[.]"

This approach is not the type of case-by-case inquiry envisioned by *Vista I*. Such an inquiry is necessary to prevent the stop-loss exception from applying to all cases that exceeded the minimum threshold. 275 S.W.3d at 550. Dr. Luke testified without contradiction that the Vista Parties' method would deem every back surgery assigned to DRGs 496, 497, 498, 500 or 520, "no matter how routine" to "have involved unusually extensive and unusually costly hospital services." This would result in the stop-loss exception applying to essentially every case

21

involving those procedures.[9] Far from disputing this, Dr. Malone testified that the advantage of the relative weight approach was that it allowed him to evaluate whether an admission involved unusually extensive services "without going through every page of a chart." In other words, the Vista Parties employed this procedure precisely because it treats cases as categories rather than limiting the application of the stop-loss exception to truly unusual cases. *See id.* (stating that Division intended reimbursement under stop-loss method to be exception to general rule). Because this approach conflicts with *Vista I*, the ALJs did not err by disregarding the Vista Parties' evidence.

We overrule the Vista Parties' fifth issue.

## CONCLUSION

We affirm the district court's judgment.

_____

Edward Smith, Justice

Before Justices Goodwin, Baker, and Smith

Affirmed

Filed: December 28, 2022

---

[9] According to Dr. Luke, such surgeries constitute 79% of the 509 disputed claims that he analyzed.